IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. BURTON


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

KARNELL D. BURTON, APPELLANT.


Filed February 23, 2021.    No. A-20-349.


Appeal from the District Court for Douglas County: GARY B. RANDALL, Judge. Affirmed.

Gerald L. Soucie for appellant.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman for appellee.


RIEDMANN, BISHOP, and WELCH, Judges.

BISHOP, Judge.

Karnell D. Burton appeals from the Douglas County District Court's denial of his motion for new trial based on newly discovered evidence. We affirm.

BACKGROUND

TRIAL AND DIRECT APPEAL

The facts in the instant case were summarized in Burton's direct appeal to the Nebraska Supreme Court in *State v. Burton*, 282 Neb. 135, 137-38, 802 N.W.2d 127, 130-31 (2011), as follows:

> This case arises out of the shootings of Timothy Thomas and his cousin Marshall Turner, which left Thomas dead and Turner seriously wounded. Generally, the State accused Burton and his alleged accomplice, Thunder Collins, of shooting Thomas and Turner in an attempt to steal cocaine from them. In connection with those shootings, Burton

- 1 -

was charged with first degree murder, attempted second degree murder, first degree assault, and three counts of use of a deadly weapon to commit a felony.

The State's evidence at trial, taken in the light most favorable to the State, established that Collins, Turner, and Thomas had been engaged in transporting cocaine from Los Angeles, California, to sell in Omaha, Nebraska. On the trip that culminated in the shootings at issue in this case, Turner and Thomas had driven to Omaha from California in a sports utility vehicle (SUV), accompanied by Turner's girlfriend and another man, Darryl Reed. The cocaine they were transporting had been hidden in the body of the SUV.

Collins contacted his friend Ahmad Johnson, who testified at trial that Collins asked him to help Collins "get these guys." Collins told Johnson that they needed a secure location to get the drugs out of the SUV. Johnson asked his friend Karl Patterson whether they could use Patterson's automotive repair shop. Patterson refused, but, according to Johnson, agreed to give Collins a gun. Collins and Johnson then tried to contact Burton, but failed. So, Collins told Turner and Thomas to follow Collins in their SUV to Johnson's house, to use Johnson's garage to remove the drugs from the SUV.

Burton called Collins back, and Collins told him to come to Johnson's house, so he did. Johnson took the gun that they had gotten from Patterson and placed it in the kitchen. Burton and Johnson were in the house talking when Collins came in and asked for a gun Burton had brought with him, which was smaller. Johnson said he told Burton to "watch [Collins'] back," then went outside and sat in his car, listening to music.

Turner and Thomas were still in the garage, and Turner was watching Thomas work to remove the drugs from the SUV, when Turner was suddenly shot in the neck. Turner fell to the ground and crawled under the SUV. When he got up, he saw Burton pointing a gun at him and Collins holding Thomas by the hair. Turner tried to get between Collins and Thomas, so Burton shot Turner in the buttocks. Collins then shot Thomas in the head. Burton went to help Collins move Thomas' body, and Turner heard Burton say, "Let me make sure this nigger dead." Another shot was fired, grazing Turner's head. Turner heard Collins and Burton go out the back door of the garage, so he got into the SUV, drove it through the closed garage door, and fled.

The court further found:

Burton had been taken into police custody at the scene of the crime and gave a statement to police that was not admitted into evidence at trial. But, when Burton testified at trial, his statement was used as the basis for impeachment on cross-examination.

Turner and Johnson testified at trial, and their accounts of events are essentially set forth above--that Turner and Thomas were in the garage at Johnson's house when Collins and Burton came into the garage and attacked them. Specifically, Turner said that Collins shot him, then Burton shot at him two more times, while Collins killed Thomas.

Burton gave a different account. Burton testified at trial that he and Johnson had both been in the kitchen at Johnson's house, when they heard a scuffle in the garage and the sound of a gunshot. Burton said that he grabbed a gun off the stove and that he and Johnson both ran into the garage. According to Burton, he shot Turner in the buttocks because Collins, fighting with Turner and Thomas, had said that Turner had a gun. Burton

said that after he shot Turner in the buttocks, Collins took the gun from him and Burton left the garage. Burton said he did not know whether Johnson also left the garage. Then, Burton heard more gunshots, and was leaving when he saw the SUV crash through the garage door and speed away.

But on cross-examination, Burton admitted initially telling police that neither he nor Johnson had been in the garage at all. Then, eventually, Burton had admitted to police that he had shot Turner. Specifically, Burton did not deny telling police that he and Johnson had been in the garage watching the removal of the drugs, then gone into the kitchen, where he had been given a gun to take back into the garage. Burton admitted telling police, contrary to his trial testimony, that he and Collins had been in the garage, but not Johnson. Nor did Burton deny telling police that, contrary to his trial testimony, he had been present when Collins shot Turner and Thomas and that Collins had shot both men before Burton shot Turner.

*Id.* at 141-42, 802 N.W.2d at 133-34.

Burton was convicted of manslaughter, attempted second degree murder, first degree assault, and two counts of use of a deadly weapon to commit a felony. He was sentenced to a total of 80 to 130 years in prison. The Nebraska Supreme Court affirmed Burton's convictions and sentences on direct appeal.

### POSTCONVICTION AND FEDERAL HABEAS

In 2012, Burton filed a motion for postconviction relief. The district court denied Burton's motion for postconviction relief without an evidentiary hearing, and this court affirmed. See *State v. Burton*, No. A-14-584, 2015 WL 3955485 (Neb. App. June 30, 2015) (selected for posting to court website). Burton's petition for further review was denied by the Nebraska Supreme Court on September 10, 2015.

In November 2015, Burton filed a federal petition for the writ of habeas corpus under 28 U.S.C. § 2254, but his petition was denied. See *Burton v. Frakes*, No. 8:15CV417, 2017 WL 1048060 (D. Neb. Mar. 17, 2017).

Neither Burton's motion for postconviction relief nor his federal petition for writ of habeas corpus involved issues relevant to this current appeal.

### MOTION FOR NEW TRIAL

On October 10, 2019, Burton filed a pro se motion for new trial pursuant to Neb. Rev. Stat. § 29-2101 (Reissue 2016). Burton alleged, in relevant part, that his trial counsel informed him that he had contacted Collins but was unsuccessful in getting him to testify at Burton's trial. Burton further alleged that he later discovered that trial counsel never spoke with Collins; if he had spoken with or interviewed Collins, counsel would have learned that Collins would have testified at Burton's trial that Burton "saved his life that day." Burton alleged that Collins' testimony would have corroborated both Burton and the victim's testimony that Burton only shot the victim when the victim and Collins were fighting over the gun; this would have supported Burton's "self-defense of others theory." Burton also alleged that during the jurors' deliberation, "they asked one question 'can you define self defense of others,'" and the judge "told the jurors they had to go

with what they got in the jury instructions"; if Collins had testified, the jurors' verdict may have been different.

Attached to and referenced in Burton's motion for new trial was an affidavit from Collins, dated August 29, 2019. The affidavit stated, "On September 23, 2008 Burton saved my life. I was never contacted, interviewed, nor called as a witness to testify at Karnell Burton's trial by his lawyer." Also attached to Burton's motion was a letter from Collins dated August 29, 2019. The letter appears to be written to Burton's sister and stated that Collins had been trying to contact Burton, but the prison would not allow it; Collins further stated that Burton's lawyer never contacted him for an interview or called him to testify at Burton's trial, but that Collins wanted to testify "about how he saved my life." Additionally, there is a letter dated September 2, 2019, which appears to be written to Burton from his sister and which passes the information from Collins' August 29 letter on to Burton. Finally, there is an affidavit from Burton dated September 10, 2019, stating that he was told by his trial attorney during the pretrial stage of the case that counsel reached out to Collins to be a witness, that Burton just learned that his attorney never contacted Collins, and that Burton had no previous knowledge that Collins wanted to testify because Burton and Collins have "been put on a no communication restriction with each other since the day of [Burton's arrest]" in September 2008.

Various other motions were filed by Burton in October, November, and December 2019. In an order entered on December 12, 2019, the district court ruled on these motions, but the court did not address Burton's motion for new trial. Burton filed a motion to alter or amend. In a letter filed on January 17, 2020, the district court stated that it "takes no action as there is nothing pending" in Burton's case, and that the case was dismissed on "December 10 [sic] [2019]." Burton appealed to this court in case No. A-20-080; on February 24, 2020, we dismissed the appeal for lack of jurisdiction because the district court had not yet ruled on all pending motions.

On March 5, 2020, Burton filed a pro se motion for new trial based on newly discovered evidence pursuant to § 29-2101(5). Burton alleged that he received a letter and affidavit from Collins on or around September 5, 2019, stating that Collins was never contacted for an interview or called as a witness on Burton's behalf and that Collins wanted to testify at Burton's trial as to how Burton saved Collins' life; Collins' letter and affidavit were attached to the motion. Burton also alleged that he spoke with his trial counsel regarding Collins' letter and affidavit and that counsel stated, "'[I] did have a bunch of other trials pending and [I] must have just forgot to get in touch with [C]ollins.'" Trial counsel's affidavit dated February 25, 2020, was attached to Burton's motion and stated, "[D]uring trial preparation the affiant [trial counsel] made no attempts to interview or depose Thunder Collins, who at all times was represented by counsel." Burton alleged that he had been told by trial counsel at the pretrial stages that counsel had reached out to Collins for an interview and to get Collins to testify on Burton's behalf, and that until recently, Burton had no way of knowing that Collins wanted to testify or that trial counsel never contacted Collins because Burton and Collins "had been placed on a [n]o contact or communication order by the arresting officers" and by the Nebraska Department of Correctional Services.

Burton filed various other motions in March and April 2020.

On April 8, 2020, the district court entered a written order denying Burton's October 10, 2019, and March 5, 2020, motions for new trial. As relevant, the court stated that only § 29-2101(5) (newly discovered evidence) was potentially applicable to any of Burton's claims. However, the

- 4 -

court found that Burton failed to show that the evidence could not with reasonable diligence have been discovered and produced at trial. The court stated that Burton was aware that Collins was a potential witness during trial and any alleged deficiency by trial counsel on the matter could have been discovered and resolved during Burton's first request for postconviction relief. The court continued, "Burton's attached letter and affidavits indicate that his claims are based on newly available evidence of the error rather than newly discovered evidence." The court determined that Burton's motion for new trial was untimely and denied the motion without an evidentiary hearing. The district court's order also disposed of all other outstanding motions.

Burton appeals.

ASSIGNMENT OF ERROR

Burton assigns, restated, that the district court erred when it denied his motion for new trial based on newly discovered evidence.

STANDARD OF REVIEW

A de novo standard of review applies when an appellate court is reviewing a trial court's dismissal of a motion for a new trial under Neb. Rev. Stat. § 29-2102(2) (Reissue 2016) without conducting an evidentiary hearing. *State v. Cross*, 297 Neb. 154, 900 N.W.2d 1 (2017).

ANALYSIS

In criminal cases, motions for new trial are governed by §§ 29-2101, 29-2102, and 29-2103 (Reissue 2016). The Nebraska Supreme Court explained the statutory framework in *State v. Cross, supra*.

Section 29-2101 sets out the seven grounds on which a motion for new trial may be based; only § 29-2101(5) is relevant to this case. Pursuant to that subsection, a new trial may be granted based on "newly discovered evidence material for the defendant which he or she could not with reasonable diligence have discovered and produced at the trial." § 29-2101(5). A new trial may be granted only if the ground materially affects the defendant's substantial rights. See, § 29-2101; *State v. Cross, supra*. See, also, § 29-2103(4) (motion for new trial alleging newly discovered evidence must be filed within reasonable time after discovery of new evidence and cannot be filed more than 5 years after date of verdict, unless motion and supporting documents show new evidence could not with reasonable diligence have been discovered and produced at trial and such evidence so substantial that different result may have occurred). Burton's motion for new trial was filed more than 5 years after the date of the verdict.

The Nebraska Supreme Court has defined newly discovered evidence as evidence which neither the litigant *nor counsel* could have discovered by the exercise of reasonable diligence. See *State v. Timmens*, 282 Neb. 787, 805 N.W.2d 704 (2011) (emphasis supplied). The evidence must also be more than merely cumulative; it must be competent, relevant, and material, and of such character as to reasonably justify a belief that its admission would bring about a different result if a new trial were granted. *Id*.

In the instant case, Collins' testimony does not qualify as "newly discovered evidence." Even though Burton alleged he did not have personal knowledge of Collins' willingness to testify on his behalf (because of the no contact order), Burton's trial counsel, with "reasonable diligence,"

could have contacted Collins and learned of his desire to testify. See *State v. Timmens, supra*. Furthermore, as noted by the State:

> Even if Burton was not aware until 2019 that Collins allegedly wanted to testify at Burton's trial, the substance of Collins' testimony has always been known by Burton given that he and Collins were the only two people in the garage with the victims at the time Turner was shot and Thomas was murdered. Thus, Burton has not alleged "new evidence" warranting a new trial.

Brief for appellee at 9. See, generally, *State v. Jackson*, 264 Neb. 420, 648 N.W.2d 282 (2002) (substance of codefendant's testimony not new evidence if it was always known by defendant seeking new trial; codefendant's testimony not newly discovered evidence, but only newly available evidence which does not provide basis for granting new trial).

In any event, Collins' testimony would have been merely cumulative, as reflected in Burton's own motion for new trial. In his motion for new trial filed on October 10, 2019, Burton alleged that Collins' testimony would have corroborated both Burton and the victim's testimony that Burton only shot the victim when the victim and Collins were fighting over the gun, and this would have supported Burton's "self-defense of others theory."

At trial, the jury was instructed as to the material elements the State was required to prove for each of the six charged offenses; for each charge, one of the elements the State was required to prove beyond a reasonable doubt was that "[t]he Defendant [Burton] did not act in defense of Thunder Collins." The jury was also given the following instruction:

### INSTRUCTION NO. 11

The Defendant Karnell Burton acted in defense of Thunder Collins if:

1. The Defendant reasonably believed that Timothy Thomas and/or Marshall Turner threatened, attempted or caused death or serious bodily harm to Thunder Collins; and

2. The Defendant did not provoke any such threat or use of force by Timothy Thomas and/or Marshall Turner against Thunder Collins with the intent of using deadly force in response; and

3. Under the circumstances as they existed at the time, the Defendant reasonably believed that his use of deadly force was immediately necessary to protect Thunder Collins against any such force used or threatened by Timothy Thomas and/or Marshall Turner.

The fact that the Defendant may have been wrong in estimating the danger to Thunder Collins does not matter so long as there was a reasonable basis for what the Defendant believed and he acted reasonably in response to that belief.

The jury later submitted a written request asking the trial court to "Please define 'defense of'" for instruction No. 11. In response, the trial court issued a supplemental instruction to the jury stating, "You have received all the evidence you will receive during the trial. You should continue your deliberations by reviewing the evidence, the arguments of counsel and the jury instructions."

Contrary to Burton's assertion, the fact that the jury requested clarification of the defense of others instruction is irrelevant to the issue in this current appeal. Burton's own motion states that Collins' testimony would have corroborated both Burton's and the victim's testimony.

Therefore, not only was Collins' testimony cumulative, it was not of such character as to reasonably justify a belief that its admission would bring about a different result if a new trial were granted. See *State v. Timmens, supra*.

Because Burton filed his motion for new trial more than 5 years after the date of his verdict, and failed to show new evidence that could not, with reasonable diligence, have been discovered and produced at trial, the district court properly dismissed the motion for new trial without a hearing. See § 29-2102(2) ("[i]f the motion for new trial and supporting documents fail to set forth sufficient facts, the court may, on its own motion, dismiss the motion without a hearing").

## CONCLUSION

For the reasons stated above, we affirm the district court's decision to deny Burton's motion for new trial.

AFFIRMED.